313 So.2d 303 (1975)
Ruth S. KAY et al., Plaintiffs-Appellees,
v.
HOME INDEMNITY COMPANY, Defendant-Appellant.
No. 4853.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
Rehearing Denied June 18, 1975.
*304 Gold, Hall, Hammill & Little, James D. Davis, Alexandria, of counsel, for defendant-appellant.
Gerard F. Thomas, Jr., Natchitoches, for plaintiffs-appellees.
Before FRUGÉ, CULPEPPER and DOMENGEAUX, JJ.
FRUGÉ, Judge.
This case arises out of an automobile accident between Mrs. Ruth S. Kay and Gary Cutright on March 23, 1973. Suit was filed by Mrs. Kay and her husband, Jerry Kay, against Cutright and his insurer, Home Indemnity Company. After trial on the merits the district court rendered judgment in favor of the plaintiffs. Jerry Kay was awarded the sum of $21,476 which included property damage, loss of earnings of Mrs. Kay for two years, and medical expenses incurred on behalf of the community. Mrs. Ruth S. Kay was awarded $35,000 in general damages. The defendants have appealed from this judgment contending that the trial court erred in finding that certain injuries received by Mrs. Kay resulted from the accident. We affirm.
We are concerned solely with the question of damages in this case. The accident *305 occurred on March 23, 1973, on State Highway 117 as Mrs. Kay was returning to her home in Provencal, Louisiana, from her job at Northwestern State University at Natchitoches, Louisiana. The defendant Cutright was also traveling on Highway 117 in the opposite direction from Mrs. Kay. As Cutright was approaching a bridge on Highway 117 his truck began skidding on the wet pavement. Although Mrs. Kay noticed Cutright's skidding truck and pulled to the extreme right of her lane, Cutright's vehicle crossed the center line of the highway into Mrs. Kay's lane of traffic and struck Mrs. Kay's vehicle. The trial court found that the accident was caused solely by the negligence of Cutright. Defendants do not appeal this finding.
Following the accident Mrs. Kay was brought to Natchitoches Parish Hospital where she was treated by Dr. Charles E. Cook, her family physician. Dr. Cook diagnosed Mrs. Kay as having an acute-thoracolumbar sprain with cervical involvement. She was given pain-relieving drugs.
After four days Mrs. Kay was transferred to Physicians and Surgeons Hospital in Shreveport on March 27, 1973. This transfer was made at Mrs. Kay's request so that she could be placed under the care of Dr. W. W. Fox, an orthopedic surgeon who had previously treated Mrs. Kay.
Mrs. Kay was confined to Physicians and Surgeons Hospital until April 11. At the hospital she was treated conservatively with traction and physical therapy and was given drugs for pain and muscle relaxation.
Following her discharge from Physicians and Surgeons Hospital Mrs. Kay remained under the care of Drs. Cook and Fox. She had scheduled office visits with Dr. Fox through the date of trial. In addition Mrs. Kay began to have menstrual difficulties and saw Dr. Oscar L. Berry, a gynecologist, for these problems. The record shows that Mrs. Kay had to undergo hospital care several times after her discharge from Physicians and Surgeons Hospital for various problems which she claims were accident-related.
The record shows that prior to the accident Mrs. Kay worked as a stenographer-clerical worker at Northwestern State University. She also was going to school there part-time, with the immediate intention of receiving a two-year degree in secretarial science.
The trial court awarded Mrs. Kay $35,000 in general damages. He awarded her husband Jerry Kay $21,476 which was divided as follows: (1) loss of future salary of Mrs. Kay for two years $11,647.20; (2) loss of annual leave time and sick leave $337.44; (3) loss of salary from the accident until March 1, 1974 $3,602.42; (4) medical, drug, and travel expenses $4,889.11; (5) automobile damage $1,000.
Appellants contend that the trial court erred in finding that certain injuries were sustained by Mrs. Kay or that they were accident-related. Specifically they contend that the trial court erred (1) in finding that Mrs. Kay had suffered a herniated disc as a result of the accident, and (2) in finding that subsequent vaginal bleeding and a hysterectomy resulted from the accident. Appellants do not contend that the award of the trial court is excessive, given these findings. They contend that there is no basis for finding that she suffered those injuries as a result of the collision with Cutright.
We deal first with Mrs. Kay's menstrual difficulties. The record establishes that Mrs. Kay had a history of menstrual difficulty. She had experienced abnormal bleeding and at least two spontaneous miscarriages. The abnormal bleeding was associated with certain birth control methods employed by Mrs. Kay. When the birth control methods were discontinued her menstrual cycle returned to normal. It was established that for eleven months preceding the accident Mrs. Kay had not experienced any abnormal bleeding.
*306 Mrs. Kay testified that she began to have unexplained vaginal bleeding on the day after the accident and that the bleeding continued during the entire time she was hospitalized. Appellants contend that this testimony is incredulous since no hospital records show any such bleeding. However, Mrs. Kay clearly did have a bleeding problem when she saw Dr. Oscar L. Berry on May 14. On May 22 Dr. Berry performed an operation known as a D & C in an attempt to control and diagnose the problem. Following the operation Mrs. Kay's bleeding stopped until June 18. On that date the bleeding started once again and continued on an abnormal basis until October 25 when Dr. Berry performed a hysterectomy.
Appellants contend that there was no showing that the menstrual problems were accident-related and that the hysterectomy operation was elective on the part of Mrs. Kay.
We note that the trial court accepted Mrs. Kay's testimony that she began bleeding on the day after the accident. In this regard, Dr. Berry testified that he was not surprised that there was no hospital record of the bleeding because "for a woman to be in the hospital and have a menstrual period usually goes unnoticed." This is not a complete explanation in view of the fact that if Mrs. Kay's testimony is correct the bleeding continued for a considerably longer period of time than is normal.
However, it is clear from the testimony of Dr. Berry, as well as from Mrs. Kay, that she was having difficulty soon after she left the hospital. She saw Dr. Berry for the first time on May 14 which is a little over a month after her release from Physicians and Surgeons Hospital. Because of her difficulties he performed the D & C a few days later on May 22.
Dr. Berry testified that it was his opinion that, assuming Mrs. Kay did not have any problems in the past, her problem was accident-related. Appellants contend that when Dr. Berry made this statement he was not aware of her previous history of menstrual difficulty and that upon learning this history he retracted this statement. They cite the following testimony.
"Q. Now, I would like you to further assume that this lady before this automobile accident happened to have had two spontaneous miscarriages; that she had an IUCD inserted in 1969, which was removed in 1970; and that she frequently complained of problems referable to her female organs; that she was checked by a competent medical examiner in March of 1972, her pelvic examination was normal, and that in April of 1972, approximately that time, she had miscarried again; and that on the 4th of April she was scheduled for a D & C but she was doing fine and didn't need one
"A. This is in 1972?
"Q. Yes, sir. And that she had menorrhagia, is that the way it is pronounced?
"A. This is heavy bleeding.
"Q. Metrorrhagia
"A. That means bleeding between the periods.
"Q. All of this prior to the automobile accident. Would those facts change your opinion as to whether the accident had anything to do with causing this excessive vaginal bleeding?
"A. Well, if you have it before, then how do you say it changed it?
"Q. Then your opinion would be, adding those facts, that you don't think that the accident caused the bleeding that you treated this lady for, since she had it before?
"A. I just say you haven't changed anything. If you bleed, have regular menstrual periods or heavy *307 menstrual periods, and you bleed in between your periods, what did we just say. We just said that what she had was bleeding between her periods and heavy menstrual periods. So you really haven't changed from something to something, you have just continued the same thing you have been doing, right?

"Q. Right. So the accident didn't cause this, she already had it before?
"A. You are assuming that someone has all this before, and they have an accident, continues the same thing, then the accident would probably have no bearing on it." (Emphasis added.)
Dr. Berry's answers indicate that assuming Mrs. Kay had had a bleeding problem immediately prior to the accident and the same problem following the accident, then there would be no cause and effect relationship between the bleeding and the accident. The record, however, shows that Mrs. Kay's previous abnormal bleeding was associated with the birth control methods she employed. During the eleven months preceding the accident Mrs. Kay did not use any birth control methods and had not had any abnormal menstrual bleeding.
The burden is upon the plaintiff to prove that the damages received resulted from defendant's fault. "But proof need be only by a preponderance of evidence, not by some artificially created greater standard." Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, 155 (1971). Proof may be made by direct or circumstantial evidence. Additionally, an appellant court may not substitute its judgment for that of the trier of fact absent a showing of manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973).
Dr. Berry was of the opinion that, assuming no previous difficulties, Mrs. Kay's abnormal bleeding was accident-related. Except for the time she was on birth control pills and the IUD, Mrs. Kay had had no abnormal menstrual bleeding. For eleven months preceding the accident during which time she was not employing birth control Mrs. Kay had no abnormal bleeding. Shortly after the accident Mrs. Kay began bleeding abnormally such that hospitalization was required and a surgical D & C was performed. We cannot say, in these circumstances, that the trier of fact was manifestly erroneous in concluding that the menstrual difficulties were caused by the accident.
Furthermore, even though Mrs. Kay's hysterectomy operation was elective we find that it resulted directly from the accident-caused difficulties. Following the D & C operation Mrs. Kay's bleeding recommenced June 18 and continued abnormally until the time of the hysterectomy on October 25. Although there was some indication that the problem was controllable with birth control pills, Mrs. Kay had not successfully been able to use the pill before the accident. They had in fact caused her similar abnormal bleeding problems. In these circumstances it was not unreasonable for Mrs. Kay to agree to the hysterectomy, and we find no error in the trial court's finding a causal connection between the accident and the hysterectomy operation.
Appellants also contend that the trial court erred in finding that Mrs. Kay suffered a herniated disc as a result of the accident. They contend that the evidence does not support such a finding and that the $35,000 award in general damages is therefore excessive.
Appellants contend that immediately following the accident Mrs. Kay complained of pain in the neck and upper back but had no complaint of lower back pain upon which the award was based. However, the Natchitoches Parish Hospital records show that Dr. Cook did find some tenderness in the lumbar region on the day she was admitted. His overall impression on the day of the accident was that Mrs. Kay had suffered *308 an "acute thoracolumbar sprain with cervical involvement."
When Mrs. Kay was transferred to Physicians and Surgeons Hospital she was treated with traction and physical therapy by Dr. W. W. Fox, an orthopedic surgeon. Her complaint to Dr. Fox was of pain in the back and pain and some numbness down the right leg. During the period of hospitalization Mrs. Kay was treated with muscle relaxants and analgesic drugs. Upon discharge Mrs. Kay was fitted with a "Williams" brace as the "final form of treatment." Following discharge she continued to see Dr. Fox on a regular basis up to the date of trial.
It is apparent that the trial judge relied heavily on the testimony of Dr. Fox. Dr. Fox firmly believed, despite two negative myelograms, that Mrs. Kay had some type of disc problem which was caused by the accident. Dr. Fox admitted that he could make no objective findings of a disc or other orthopedic explanation of Mrs. Kay's problem. Nevertheless, he stated that a myelogram is only about 70% accurate in finding a disc and firmly stated that he thought she had a disc.
Dr. Fox also concluded that Mrs. Kay was unable to carry out her employment duties up through 1974 and did not think she would be able to keep up steady employment.
Contrary testimony was elicited by Dr. Roy Beulot, Jr., an Alexandria orthopedist, who at one point indicated that he felt plaintiff had essentially a normal back which did not limit her capacity to perform any activity. Yet he elsewhere admitted to positive findings indicating nerve root involvement and his belief that plaintiff was having pain but that he simply could not give an orthopedic reason for it.
Lay testimony of Mrs. Kay's mother and husband also established that she was having pain in the back which disrupted her ability to do normal chores.
We note that the trial judge did not attempt to make a factual determination of whether or not Mrs. Kay had a herniated disc. Nevertheless, it is clear that he was impressed by the testimony of Dr. Fox who was her treating physician and by the lay testimony adduced, that Mrs. Kay had suffered a painful and disabling injury to her back.
We find no error in this finding. The opinion of a treating physician is entitled to greater weight than that of a nontreating physician. Bourque v. Vallot, 286 So.2d 163 (La.App.3rd Cir. 1973); Lockhart v. Pargas, Inc., 271 So.2d 664 (La. App.1st Cir. 1972). And where there is conflicting medical evidence, the trier of fact is entitled to consider the testimony of lay witnesses. Johnson v. Employers Mutual Liability Insurance Company of Wisconsin, 250 So.2d 38 (La.App.3rd Cir. 1971).
In light of the menstrual and back injuries received by Mrs. Kay we find no abuse in the trial court's award of $35,000 in general damages. Prior to the accident Mrs. Kay was a productive worker and competent housewife. Her injuries from the accident have caused considerable pain, have prevented her from performing normal household chores, and have caused hospitalization on several occasions. She was emotionally upset and depressed at her disability up to the time of trial and at one point was referred to a psychologist. Although Mrs. Kay attempted to return to work on one occasion, she resigned. The trial court accepted her testimony that she was unable to carry out normal job functions due to pain. She also has been unable to return to school.
In computing general damages much discretion is vested in the trier of fact. Civ.Code art. 1934; Derrick v. Travelers, 301 So.2d 683 (La.App.3rd Cir. 1974). We do not find any abuse of that discretion here.
*309 Finally, appellant contends that there was error in awarding Jerry Kay loss of future salary for his wife for two years. In computing loss of future earnings our Supreme Court has acknowledged that trial courts have reasonable discretion to compute damages on the facts and circumstances of the case. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971). See also Edwards v. Sims, 294 So.2d 611 (La.App.4th Cir. 1974). In making this award the trial court took into consideration Mrs. Kay's good work record prior to her accident, the testimony of Dr. Fox concerning her disability and its continuance, and Mrs. Kay's difficulty in doing household, chores. While no one can definitely determine the length of Mrs. Kay's disability, the period determined by the trial court is within the range of reasonable discretion.
For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants.
Affirmed.