514 So.2d 678 (1987)
Patricia A. COLVILLE, Plaintiff-Appellee,
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, et al., Defendants-Appellants.
No. 19030-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1987.
*679 Mayer, Smith & Roberts by Ben Marshall, Jr., Shreveport, for defendants-appellants.
Sam N. Gregorio, P.C. by Jim McDougle, Shreveport, for plaintiff-appellee.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Patricia A. Colville, filed suit against the defendants, Equitable Life Assurance Society of the United States (Equitable) and Sisters of Charity of the Incarnate Word d/b/a Schumpert Medical Center (Schumpert), for payment of a health insurance claim for expenses incurred during her hospitalization in Brentwood Hospital in Shreveport from December 4, 1980 through January 31, 1981. The trial court granted judgment in favor of the plaintiff but denied her claim for penalties and attorney fees. From that judgment, the defendants have appealed, claiming the trial court erred in awarding benefits to the plaintiff under the terms of the health insurance policy. The plaintiff answered the appeal, claiming the trial court erred in failing to award penalties and attorney fees. For the following reasons, we affirm the trial court judgment.

FACTS
Schumpert Medical Center carried group health insurance for its employees with Equitable. The plaintiff was trained as a registered nurse and was employed in that capacity by Schumpert. Plaintiff's employment history with Schumpert, consisted of both part-time and full-time work. Health benefits under the Equitable policy accrued only to full-time employees. Plaintiff's latest full-time employment began July 28, 1980. Under the terms of the health insurance policy, coverage did not commence until ninety days after the date the employee began full-time employment. Therefore, the effective date of the plaintiff's insurance coverage was October 28, 1980.
*680 The Equitable policy also provided that if the insured employee sought medical treatment for a condition during the three month period prior to the effective date of coverage, and later sought treatment for the same or a related condition, this would constitute a preexisting or recently treated condition, and any subsequent expenses which arose from "such condition or any related conditions" would not be included during the first twelve months of coverage.
The first twelve months commenced on October 28, 1980. Therefore, the period of plaintiff's hospitalization from December 4, 1980 through January 31, 1981 would be excluded from coverage under the Equitable policy if the reason for the hospitalization was the treatment of a condition which had also been treated during the three month qualifying period.
The evidence at trial revealed that the plaintiff began therapy with a psychologist, Dr. Mark Vigen, in February, 1980. Dr. Vigen diagnosed the plaintiff as suffering from a borderline personality disorder. As therapy progressed, Dr. Vigen became concerned with his method of treatment in light of plaintiff's lack of progress. Therefore, Dr. Vigen sought a consultation from a psychiatrist, Dr. Douglas William Greve. Dr. Vigen sent plaintiff to Dr. Greve on July 8, 1980 and August 14, 1980. The latter visit was during the three month qualifying period under the policy. These visits were consultations with Dr. Vigen's patient to determine if Dr. Vigen was following the proper course in treating the plaintiff.
On December 4, 1980, the plaintiff on her own initiative, consulted Dr. Greve. She was experiencing significant symptoms of a general anxiety disorder and was considering suicide. Dr. Greve admitted the plaintiff to Brentwood Hospital on December 4, 1980 and she remained there until January 31, 1981. On her admission chart, Dr. Greve listed her admitting diagnosis as borderline personality disorder, the condition for which the plaintiff had been treated by Dr. Vigen. However, her discharge diagnosis was listed as a general anxiety disorder, with a secondary diagnosis relating to the personality disorder. During her hospital stay, the plaintiff was treated with medication by Dr. Greve and was visited occasionally by Dr. Vigen.
In connection with plaintiff's admission to Brentwood Hospital, Schumpert was contacted in order to determine whether the plaintiff's health insurance coverage included the contemplated psychiatric care. Schumpert indicated that such treatment was included in the policy coverage. The plaintiff was then admitted to Brentwood and incurred medical expenses of $10,519.54. Plaintiff filed for payment of these expenses under her group health insurance policy. Equitable refused to pay the claim, advising plaintiff that her hospitalization was not covered because it was related to a preexisting or recently treated condition.
The plaintiff sued the defendants, claiming that her hospitalization was covered and that Equitable arbitrarily and capriciously denied her claim. She also contended that employees of Schumpert negligently misrepresented that the expenses which she incurred during her hospitalization were covered by the health insurance policy.
The trial court found that the anxiety disorder for which the plaintiff was hospitalized and treated by Dr. Greve was not related to the borderline personality disorder for which she was treated by Dr. Vigen. The trial court also found that plaintiff's consultation visits with Dr. Greve were not related to the anxiety disorder for which she was subsequently hospitalized. Therefore, plaintiff's hospital expenses were not for services or treatments connected to the preexisting illness.
The trial court awarded the plaintiff $9,419.54, the full amount due under the terms of the policy. The trial court denied plaintiff's claim for penalties and attorney fees, finding that serious factual and legal disputes existed between the parties and therefore refusal to pay the claim by Equitable was not arbitrary or capricious.
The issues for consideration in this case are whether the trial court was correct in finding that the anxiety disorder for which the plaintiff was hospitalized was unrelated *681 to the personality disorder for which she had previously been treated, and whether the trial court was correct in denying the plaintiff's claim for penalties and attorney fees.

PREEXISTING OR RELATED CONDITION
Equitable seeks to avoid payment of plaintiff's claim based upon the following exclusionary clause contained in the contract of insurance:
If, at the time a person becomes covered under this plan, such individual has been recently treated for a condition arising from an injury or sickness, Covered Charges shall not include expenses for services, supplies, and treatment which arise from such condition or any related conditions during the first 12 months of coverage.
A recently treated condition is an injury or sickness for which a covered person received treatment or services, or took prescribed drugs or medicines, during the three month period just before being covered under this plan. This limitation shall also apply with respect to pregnancy.
Exclusionary clauses in insurance contracts are to be strictly construed. Little v. Kalo Laboratories, Inc., 406 So.2d 678 (La.App. 2d Cir.1981), writ denied 410 So.2d 1133 (La.1982). An insurer who denies a claim based upon an exclusion bears the burden of proving the existence of the requirements for the exclusion. Taylor v. Security Industrial Insurance Company, 454 So.2d 1260 (La.App. 2d Cir.1984); Little v. Kalo Laboratories, Inc., supra; Cheramie v. Board of Trustees, State Employees Group Benefit Program, 482 So.2d 742 (La.App. 1st Cir.1985), writ denied 486 So.2d 734 (La.1986); Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984); Estate of Borer v. Louisiana Health Service and Indemnity Company, 431 So.2d 49 (La. App. 1st Cir.1983); Broussard v. National American Life Insurance Company, 302 So.2d 627 (La.App. 3rd Cir.1974), writ denied 305 So.2d 133 (La.1974).
In the present case, Equitable claimed that the personality disorder for which the plaintiff received treatment from Dr. Vigen was related to the anxiety disorder for which the plaintiff was hospitalized and treated by Dr. Greve. Equitable also contends that Dr. Greve's consultation sessions with the plaintiff on July 8, 1980 and August 14, 1980 relative to her personality disorder constituted the rendering of services connected with a preexisting condition. Equitable argues that since the plaintiff saw Dr. Greve during the period between full-time employment and the effective date of coverage, the exclusion in the policy precluded the necessity of paying plaintiff's claim. Based upon the record before us, we find, as did the trial court, that Equitable failed to carry its stringent burden of proving exclusion from coverage.
Both Dr. Vigen and Dr. Greve testified unequivocably that the personality disorder from which plaintiff was originally suffering was a separate illness from the anxiety disorder for which plaintiff was hospitalized. Both doctors indicated that the methods of treating these disorders are entirely different. Treatment of the personality disorder requires years of psychotherapy. Medication generally is not administered. While a patient suffering from this disorder may be hospitalized, the period of hospitalization required for treatment generally runs from nine months to several years. The plaintiff in the present case was hospitalized only for a period of several weeks. The anxiety disorder is usually treated with medication, as well as psychotherapy and can usually be brought under control more rapidly than a personality disorder.
Dr. Greve testified that the plaintiff did not have the anxiety and depression for which she was hospitalized when he saw her for consultations in July and August of 1980. In addition, he testified that his treatment of the anxiety disorder included the administration of medication during her hospitalization.
The defendants offered the deposition of their medical expert, Dr. James H. Phillips. Dr. Phillips never examined the plaintiff, but testified from her records. Dr. Phillips *682 stated that there is a definite relationship between the personality disorder, and the anxiety disorder but stated that this was not necessarily a cause and effect relationship. Dr. Phillips also stated that his testimony was based solely upon a hurried examination of the plaintiff's hospital records, and the pretrial depositions of the other doctors.
In this case, both Dr. Greve and Dr. Vigen actually treated the plaintiff; Dr. Phillips did not. The observations and opinions of a treating physician are to be accorded greater weight than those of a physician who did not serve in that capacity. Landry v. Louisiana Hospital Services, supra; Kay v. Home Indemnity Company, 313 So.2d 303 (La.App. 3rd Cir.1975). The trial court correctly placed greater weight on the opinions of the treating physicians who testified that the plaintiff's condition before the hospitalization was unrelated to the condition for which she was treated at Brentwood.
We find, as did the trial court, that the plaintiff's hospitalization was for a condition unrelated to that for which she had previously been treated. Therefore, the exclusion clause of the policy, quoted above, does not apply.
Accordingly, we conclude that the trial court was correct in finding that Equitable was required to pay the plaintiff's claim under the terms of the insurance policy.

PENALTIES AND ATTORNEY FEES
The plaintiff contends the trial court erred in not awarding penalties and attorney fees in addition to allowing her recovery under terms of the insurance policy. The award of penalties and attorney fees for nonpayment of health insurance claims is governed by LSA-R.S. 22:657 which provides, in pertinent part:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court...
The provisions of LSA-R.S. 22:657 are penal in nature and are to be strictly construed. The penalties should not be applied unless the refusal to pay is clearly arbitrary and capricious. Posey v. Board of Trustees, State Employment Group Benefits Program, 426 So.2d 705 (La.App. 1st Cir. 1982), writ denied 429 So.2d 139 (La.1983).
When claiming penalties and attorney fees, the insured has the burden of proving that any fault or failure to pay the claim was attributable to the insurer. McMillan v. Travelers Insurance Company, 371 So.2d 1213 (La.App. 1st Cir.1979). Whether or not an insurer's reasons for refusal are just and reasonable is a question of fact to be determined from the facts and circumstances of each case and the trial court's findings in that regard should not be disturbed unless shown to be clearly wrong. Cheramie v. Board of Trustees, supra; Landry v. Louisiana Hospital Services, supra; Thompson v. Business Insurance Life of America, 413 So.2d 331 (La.App. 3rd Cir.1982); Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir.1980); Casey v. Proprietors Life Assurance Company, 470 So.2d 339 (La.App. 5th Cir.1985).
Although a beneficiary may ultimately be determined to be entitled to policy benefits, this judicial determination does not in and of itself justify the invocation of *683 penalties. Taylor v. Security Industrial Insurance Company, supra.
In the present case, the trial court declined to require the defendant to pay penalties and attorney fees. The trial court found that, "serious legal and factual disputes existed between the parties," and that although defendant's "interpretation of the preexisting condition clause was incorrect, it was not unreasonable or strained." Based upon the record before us, we do not find the trial court's factual determination to be clearly wrong.
The plaintiff contends Equitable was arbitrary and capricious in denying her claim. Plaintiff argues that the denial was based upon her visit to Dr. Greve on July 8, 1980 and that this visit, which occurred before she began full-time employment with Schumpert, could not, under the terms of the policy, be considered as a preexisting or recently treated condition. Plaintiff also contends that Equitable should have determined that the two conditions for which she was treated were unrelated. Having considered plaintiff's contentions, we believe that she has failed to carry her burden of proving that Equitable's denial was arbitrary or capricious.
The plaintiff presented no proof as to when her claim was filed, nor specifically what was included in her claim. The record contains three documents sent from Schumpert to Equitable entitled "Certification of Health Plan Benefits." These documents appear to inform Equitable of the effective date of coverage and the basis for a claim. Those documents were somewhat confusing due to plaintiff's employment history. Plaintiff's status had changed from full-time employment (during which time benefits were payable) to part-time employment (when benefits were not payable) and then back again to full-time employment.
The certificate mailed to Equitable from Schumpert on January 14, 1981 provided a diagnosis of "severe personality disorder/borderline personality." A later certificate mailed February 10, 1981 showed a diagnosis of generalized anxiety disorder and borderline personality.
On March 3, 1981, the plaintiff was notified that her claim was denied. A letter from Equitable to the plaintiff dated April 22, 1981, indicated that Equitable contacted Dr. Greve's office and learned that he had treated the plaintiff for personality disorder and anxiety disorder and therefore, plaintiff's claim for her hospitalization was denied as resulting from a preexisting condition.
On May 5, 1981, Dr. Greve sent a letter to Equitable contending that plaintiff was not in therapy with him prior to December 4, 1980, but that he had seen her on July 8, 1980 as a consultation regarding possible hospitalization. However, Dr. Greve had also seen plaintiff on August 14, 1980, which was within the three month waiting period prior to coverage. Dr. Greve's office had also indicated that he had seen plaintiff for both conditions. Equitable again contacted the plaintiff and denied the claim.
Plaintiff contends that since her effective date of coverage was October 28, 1980, the July, 1980 visit to Dr. Greve was irrelevant for determining the existence of a preexisting condition because this visit fell outside the three month waiting period prior to coverage. In making this argument, however, plaintiff ignores the fact that she was seen by Dr. Greve during the three month period and the insurance company had information which indicated a similarity in the previous condition and the condition for which plaintiff was hospitalized. Further, in light of the different employment dates furnished to Equitable, it appears there was some confusion regarding when coverage began. As just stated, plaintiff did, in fact, consult with Dr. Greve during the three month waiting period for conditions described by his office (not the doctor himself) as being the same or similar to the condition for which plaintiff was hospitalized. In addition, the plaintiff's diagnosis on admission to the hospital was the borderline personality disorder for which she was under continuous treatment by Dr. Vigen. As a matter of fact, in light of Dr. Phillips' testimony, a very close issue was presented on the question of liability because *684 of his opinion that plaintiff's two conditions (personality disorder and anxiety disorder) were related.
If Equitable was in error in failing to timely pay the claim, it was led into that error by virtue of plaintiff's conflicting employment history, plaintiff's failure to submit a full history of her contacts with Dr. Greve, and the hospital chart indicating that plaintiff was admitted for treatment of the personality disorder.
Therefore, under the specific facts of this case, we conclude that there existed a genuine dispute as to whether the plaintiff was initially suffering from the same or similar condition for which she was hospitalized. The plaintiff failed to carry her burden of proving that Equitable's refusal to pay the claim was arbitrary or capricious.

CONCLUSION
For the reasons stated above, the judgment of the trial court is affirmed, at Equitable's cost.
AFFIRMED.