588 So.2d 1309 (1991)
Cleo Clark SHRADER, Plaintiff-Appellee,
v.
LIFE GENERAL SECURITY INSURANCE COMPANY, Defendant-Appellant.
No. 22795-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
Rehearing Denied November 27, 1991.
*1310 Rubin, Curry, Colvin & Joseph by Richard A. Curry, Shannan Sweeney Rieger, Baton Rouge, for defendant-appellant Life Gen. Sec. Ins. Co.
Dimos, Brown, Erskine & Burkett by Donald R. Brown, Frederick B. King, Monroe, for plaintiff-appellee Cleo Clark Shrader.
Before MARVIN, C.J., and SEXTON and NORRIS, JJ.
SEXTON, Judge.
Defendant Life General Security Insurance Company appeals a district court judgment finding insurance coverage for plaintiff's preexisting medical condition where plaintiff's employer replaced its previous group health and accident insurance coverage with coverage from defendant through a multiple employer trust. Defendant also *1311 appeals the district court award of penalties and attorney fees to plaintiff, while plaintiff has answered defendant's appeal, seeking an increase in those damages. The facts of the case are largely undisputed; the only significant issues presented by the case are legal. We amend and affirm as amended.

FACTS AND PROCEDURAL HISTORY
Plaintiff was employed by the G.T. Michelli Company, Inc. as an office manager, and he also helped out with other tasks, including repairing scales. As an employee with Michelli, plaintiff was covered under a group health and accident insurance policy provided to Michelli by Shenandoah Life Insurance Company.
In the autumn of 1988, plaintiff was hospitalized after experiencing chest pain. After being diagnosed with occlusive coronary artery disease, plaintiff underwent surgery for coronary angioplasty.
On January 1, 1989, plaintiff's employer changed his group health and accident coverage from Shenandoah Life to a group policy issued by defendant through United Employers Trust, a multiple employer trust. Defendant's policy contained a provision limiting coverage for preexisting conditions to $7,500.
On January 18, 1989, plaintiff underwent further treatment for a recurrence of severe coronary artery disease, incurring almost $68,000 in medical expenses. Claims for those expenses were submitted to defendant. Initially, defendant denied the claim in its entirety; however, it eventually paid plaintiff $7,500, the limits of its liability under the preexisting condition coverage in its policy.
Plaintiff filed suit against defendant, seeking coverage for his medical treatment and also asking for penalties and attorney fees. The evidence was largely stipulated, but testimony was taken from several witnesses, including Maude Cernadas, the claims manager for defendant, and Lester Dunlap, the life and health director for the Louisiana Commission of Insurance.
After taking the matter under advisement, the district court rendered judgment in favor of plaintiff. It held that because the insurance code does not contain an exemption for policies or certificates of insurance issued by multiple employer trusts, LSA-R.S. 22:215.6 applied to the policy issued by defendant to Michelli. The court further found that defendant had arbitrarily and capriciously denied or delayed payment of the $7,500 which was indisputably owed, even under the restricted coverage contained in defendant's policy, and awarded statutory penalties and attorney fees to the plaintiff. Finally, the court held that defendant did not act arbitrarily or capriciously in refusing to pay those amounts in excess of the $7,500 limit and refused to award penalties or attorney fees on that contested coverage.
Defendant now brings this appeal, arguing that the statute does not apply under the circumstances and that the district court erred in awarding penalties and attorney fees. Plaintiff has answered defendant's appeal, seeking an increase in penalties and attorney fees.

APPLICABILITY OF LSA-R.S. 22:215.6
Where an employer substitutes a group health and accident insurance policy provided by one insurance carrier with coverage provided by another carrier through the auspices of a multiple employer trust, is the substituted policy a "replacement" within the meaning of LSA-R.S. 22:215.6? If so, the "replacement" carrier may not limit the benefits otherwise payable because of a preexisting condition.
Neither defendant nor plaintiff has provided this court with jurisprudence from this or any other jurisdiction involving the same or substantially similar circumstances, nor has our independent research disclosed any; accordingly, this matter appears to be one of first impression in Louisiana.
The relevant portion of the statute provides as follows:
A. Upon the replacement of one carrier by another of any group or blanket health and accident insurance policy for *1312 ten or more members issued for delivery or delivered in this state, any limitation on benefits otherwise payable because of preexisting conditions clauses, if any, in the succeeding carrier's plan shall be the lesser of:
(1) The benefits of the new plan determined without application of the preexisting conditions limitation.
(2) The benefits of the prior plan.
....
Defendant argues that the statute, commonly referred to as the "no loss/no gain" statute, does not apply to the policy in question because: (1) it was not a "replacement" policy within the meaning of the statute, (2) any ambiguity regarding whether the instant policy comes within the purview of the statute should be resolved in favor of an interpretation by the office of the Louisiana Commissioner of Insurance that it does not, and (3) public policy argues against the applicability of the statute to the instant policy. We will address these issues individually.
Replacement of Carrier
Defendant first argues that its policy did not "replace" Shenandoah's policy because it had been previously issued to a multiple employer trust, which Michelli joined in order to procure insurance coverage from defendant. Defendant argues that Michelli did not "replace" its coverage because the policies issued first by Shenandoah and then by defendant were issued to two different entities, the Shenandoah policy to Michelli and defendant's policy to the multiple employer trust. To construe its policy as a replacement, defendant argues, ignores the legal and economic realities of the contractual arrangements among all the parties.
We have been unable to locate a definition of multiple employer trusts in the insurance code (LSA-R.S. 22:1, et seq.) and have not been referred to any by either side.
However, as we appreciate it, a multiple employer trust is an umbrella by which an insurance company issues a group policy[1] to a number of employers who have relatively few employees. The trust has no officers, no board of directors, and no employees. It is simply a fictional creation of the insurance company for the purpose we have described. Of course, the larger base provides a better underwriting basis for the insurance company and thus allows small employers to obtain the more extensive benefits of group health and accident insurance at reduced rates.
It is clear from the record that the employer, Michelli, selected the policy at issue with the $7,500 preexisting coverage exclusion from several options. The cost of that coverage was obviously a consideration. Mr. Lester Dunlap, director of life and health insurance for the Louisiana Commissioner of Insurance, testified that the interpretation given by the Insurance Commissioner's office regarding multiple employer trust policies was economically based, as small employers have enough difficulty obtaining group insurance without having to pay for preexisting condition coverage.
Defendant argues that if Michelli had simply ceased providing insurance coverage for its employees and they had procured their own policies, the statute would not have applied because the new policies would have been issued to the employees rather than Michelli. Under this hypothetical, we agree that the statute would not have applied, but not for the reason proposed by defendant. The reason for the statute's inapplicability under the hypothetical facts is that the replacement policies are of an individual rather than a group nature. The statute expressly applies only to group or blanket policies.
In support of its argument that it issued no replacement policy to Michelli, defendant points out that the actual policy of insurance, a certified copy of which was jointly entered into evidence, was issued to *1313 the trust, while a certificate of insurance, which was similarly entered into evidence by joint stipulation of the parties, was issued by the trust to Michelli as proof of coverage. Lester Dunlap acknowledged that but for a cover sheet on the certificate, it appeared to be identical to the policy. While we have not engaged in a verbatim comparison of the policy to the certificate, we can only discern a difference in type style between the two. Further, Louisiana courts have held that a certificate of group health and accident insurance which was issued to an insured was the policy within the contemplation of LSA-R.S. 22:618.[2]Smith v. North American Company for Life, Accident and Health Insurance, 306 So.2d 751 (La.1975), overruled on other grounds in Estate of Borer v. Louisiana Health Service & Indemnity Co., 398 So.2d 1124 (La.1981). See Pugh v. Prudential Insurance Company of America, 546 So.2d 335 (La.App. 3rd Cir.1989).
While we recognize the substantial benefits to be realized from pooling insurance needs into a trust, we conclude that defendant's policy was indeed a "replacement" of the group health and accident policy previously provided to Michelli within the meaning of LSA-R.S. 22:215.6. We are of the view that LSA-R.S. 22:215.6 was intended to cover the instant circumstances. The language of that statute continues preexisting condition coverage "upon the replacement of one carrier by another." Although there is indeed another entity involved (the employers trust), defendant is nevertheless another carrier clearly visible behind the veil of that entity.
Furthermore, we note that the preamble to Acts 1977, No. 332, § 1, which enacted LSA-R.S. 22:215.6, refers to the "replacement of one group or blanket health and accident insurance plan by another...." While not part of the statute itself, it evidences legislative intent that the statute should apply in situations such as the instant one, regardless of the mechanism or the means by which one carrier is replaced by another.
Commissioner's Interpretation
Defendant's next argument is that any ambiguity in the applicability of the statute should be resolved in favor of the interpretation given by the office of the Louisiana Commissioner of Insurance. The record supports defendant's argument that that office had, at least since 1986, been of the opinion that LSA-R.S. 22:215.6 did not apply when an employer substituted existing group health and accident insurance coverage with coverage provided through a trust.
In support of this argument, defendant argues that the commissioner's approval of defendant's policy for issuance in Louisiana means that the policy conforms to the requirements of the law. Defendant further argues that interpretations placed upon statutes, rules, and regulations by the official charged with the administration and approval of such provisions will be accepted by the courts if they are reasonable and equitable.
While a very persuasive indication of the true meaning of a statute is the contemporaneous administrative construction put on the statute by an agency charged with administering it, an administrative construction cannot be given effect where it is contrary to or inconsistent with the legislative intent. Sales Tax District No. 1 of the Parish of Lafourche v. Express Boat Co., Inc., 500 So.2d 364 (La. 1987).
We note that Mr. Dunlap, the commissioner's employee, testified that his office's interpretation of the statute, as applied in the context of a multiple employer trust, was developed in the absence of jurisprudential guidance and that he considered it a "highly serious" question. The underlying administrative policy in the development of his office's interpretation had been to have a uniform approach which could be applied in a consistent fashion, regardless of the domicile of the trust.
*1314 As we have previously noted, it is clear from the record that the commissioner's policy with respect to the instant question was primarily based on economic considerations. While laudable, we have concluded that this interpretation is contrary to the expression of public policy of Section 215.6.
Public Policy
Finally, defendant argues that public policy weighs in favor of reversing the district court judgment. Otherwise, many employers would be financially unable to procure group health and accident insurance coverage for their employees. It argues that the insurance coverage provided through the trust, though potentially less comprehensive, was more affordable.[3]
An equally compelling argument can be made that public policy mandates affirming the district court. Otherwise, employers and insurers could circumvent the statute by periodically replacing existing group health and accident insurance coverage with a different trust package. 1 Appleman, Insurance Law and Practice, § 46 at 165-6 (West 1981).
Accordingly, as we have previously indicated, we have concluded that the legislature has evidenced Louisiana public policy through LSA-R.S. 22:215.6 by eliminating preexisting condition exceptions where one carrier is substituted for another in group health and accident insurance policies. This trust is simply another carrier. While we recognize the cost problems attendant to group health and accident insurance for small employers, it is our view that if the legislature had intended to limit the replacement responsibility for small employers in this instance, it would have done so.

ERISA PREEMPTION
Finally, the defendant contends that the group accident and health insurance policy was an ERISA plan and that state law was thus preempted by federal law insofar as plaintiff sought statutory penalties and attorney fees under LSA-R.S. 22:657.
This is a new contention presented for the first time to this court and not raised to the trial court in any fashion. We conclude this contention is an affirmative defense which would defeat plaintiff's claim in part and is thus required to be specially pled.
"A defendant's answer shall set forth ... any ... matter constituting an affirmative defense." LSA-C.C.P. Art. 1005. The listing of specific affirmative defenses in this article is merely illustrative. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits. Webster v. Rushing, 316 So.2d 111 (La.1975).
The purpose of pleading a special defense is to give fair and adequate notice of the nature of the defense so that plaintiff is not surprised. Webster v. Rushing, supra. Here, no mention of this defense was made either in defendant's answer or its first supplemental and amending answer. Indeed, defendant's first answer specifically addressed the issue of plaintiff's claim for penalties and attorney fees and denied the allegations regarding the factual basis for that claim, with no mention of a legal basis for avoiding liability.
Defendant asserts that all of the evidence necessary to determine whether the new coverage constituted an ERISA plan is in the record. The elements which pertinent jurisprudence would have us consider are arguably contained in the instant record.
The general rule is that pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and, hence, would have been excluded if objected to timely. Webster v. Rushing, supra. [emphasis added].
*1315 Here, even though the policy which was entered into evidence may support certain aspects of defendant's argument, the affirmative defense of federal preemption, which was not raised by the pleadings, was not tried either by the express or implied consent of the parties. In other words, the pleadings were not enlarged by the evidence to include this defense even though the insurance policy was entered into evidence in support of other aspects of the case.
We have been unable to locate specific federal jurisprudence indicating that ERISA preemption must be specifically pled. However, we have located jurisprudence which so implies. In Kelley v. Sears, Roebuck and Co., 882 F.2d 453 (10th Cir. 1989), the appellate court found that ERISA preemption had been sufficiently raised at the trial court level where the insurance company had raised the issue in its answer and stipulated pre-trial order and had argued the issue to the district court before raising it on appeal. In Trustees of Amalgamated Insurance Fund v. Geltman Industries, Inc., 784 F.2d 926 (9th Cir.1986), cert. denied, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986), another ERISA case, the defendant-employer argued that the trustees of a pension plan could not seek mandatory attorney fees where its motion to confirm calculation of attorney fees and costs was brought under a statute which only provided for a discretionary award of attorney fees. However, the appellate court noted that the trustees, in their reply brief to the employer's opposition to their motion, also referred to and quoted from the statute which provided for the mandatory fees, thus sufficiently raising the issue in the district court.
In the instant case, defendant raises the issue of ERISA preemption of state law for the first time on appeal. Plaintiff had no reason to suspect that this would be an issue in the case. Even though some of the evidence in this case may tend to indicate that the group accident and health insurance plan at issue may arguably be an "employee welfare benefit plan" subject to ERISA, it is apparent that neither party was concerned with this issue when the matter was being litigated below. Other than an introduction of the insurance policy and certificate of coverage, defendant put forward no evidence to assist the district court or this court in evaluating whether the insurance plan is an ERISA plan. By that same token, plaintiff put on no evidence tending to show that the group policy was not an ERISA plan. He had no reason to believe that he needed to do so.
Having concluded that defendant failed to raise federal preemption under ERISA as an affirmative defense, we now turn to a consideration of whether the district court erred in its adjudication of the issues of statutory penalties and attorney fees under LSA-R.S. 22:657.

PENALTIES AND ATTORNEY FEES
Finally, we turn to defendant's contention that the trial court erred in assessing penalties and attorney fees at all and plaintiff's contention that penalties and attorney fees should be assessed on the total award rather than the $7,500 figure upon which the trial court assessed penalties and attorney fees.
All claims arising under the terms of health and accident insurance contracts issued in this state shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. Failure to comply shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period or delay, together with attorney fees to be determined by the court. LSA-R.S. 22:657 A.
Whether or not an insurer's reasons for refusing to pay are arbitrary and capricious is a question of fact to be determined from the facts and circumstances of each case. Soniat v. Travelers Insurance Co., 538 So.2d 210 (La.1989).
*1316 Our consideration of this issue must necessarily be bifurcated into two separate inquiries: whether the defendant arbitrarily and capriciously delayed payment of the undisputed $7,500 for the preexisting condition coverage and whether the defendant arbitrarily and capriciously denied payment for those amounts above the $7,500 limit.
The evidence indicates that plaintiff submitted a claim to defendant dated June 5, 1989, for almost $17,000 worth of medical expenses, clearly in excess of the $7,500 of coverage for preexisting conditions. The defendant's claim worksheet indicates that this portion of the claim was considered on or about July 22, 1989, and that none of those expenses were considered to be covered.
Also in evidence is a letter from plaintiff's attorney to the defendant which defendant stamped "received" on August 7, 1989, indicating that proof of loss had been submitted, but that no payment had been received on the claim. Ms. Cernadas testified that at the time her office had received this letter, she had on file the records from St. Francis Medical Center, where the angioplasty procedures were performed, which included the medical records of Dr. Steven Brazeel, plaintiff's treating physician. Dr. Brazeel's notes, reports, and summaries covered plaintiff's treatment both before and after the effective date of defendant's policy. Finally, Ms. Cernadas conceded that her office was in possession of at least one "consultation report" by Dr. David Burkett, the cardiologist who treated plaintiff for coronary artery disease in the fall of 1988 and again in early 1989.
The claim worksheet to which we referred above was prepared on July 22, resulting in a denial of plaintiff's claim. The letter from plaintiff's counsel was received by defendant on August 7 and then by Ms. Cernadas' office the next day. On August 9, 1989, Ms. Cernadas sent a letter to plaintiff's counsel, indicating that the claim had been denied. A subsequent claim worksheet prepared on August 11, 1989, showed that $7,500 of plaintiff's claim had been paid pursuant to the preexisting condition coverage, though there is no evidence in the record that plaintiff or his counsel was ever advised of this payment.
On August 17, 1989, another letter from defendant's claims department sent directly to the plaintiff advised him that his policy provided no coverage for preexisting conditions and that his claim was therefore denied. Three letters of the same or extremely similar nature were generated by defendant's claims department on September 13, 1989, involving claims in March, April, and May of that year.
Ms. Cernadas testified that after she had written the August 9 letter denying coverage, she subsequently authorized payment of the $7,500, which check was issued on August 17 and mailed directly to St. Francis Medical Center. She testified that the original denial of coverage indicated on the July 22 worksheet was due to a lack of information, but admitted that no other information was received between July 22 and August 11, when plaintiff's counsel called to question the August 9 letter indicating a denial of coverage.
The district court concluded that more than 30 days elapsed between defendant's receipt of plaintiff's written demand and proof of loss and its payment on the claim and that the defendant's failure to pay was arbitrary and capricious. We cannot say that this factual conclusion is clearly wrong. Accordingly, we find no merit to defendant's arguments regarding penalties and attorney fees for defendant's failure to pay $7,500 of plaintiff's claim within 30 days of his demand and proof of loss.
We now turn to whether the district court was in error in denying plaintiff's demand for penalties and attorney fees for its failure to pay those amounts above and beyond the $7,500. Plaintiff, by answer, seeks an award of statutory penalties and attorney fees for those benefits which the district court found to be covered notwithstanding the limitation of liability for preexisting coverage, a disposition which we affirmed earlier in this opinion. Defendant argues that this matter is res nova and that, therefore, it could not have been arbitrary and capricious in refusing to pay. Additionally, defendant argues that it was *1317 entitled to rely on an opinion by the office of the commissioner of insurance.
Provisions of LSA-R.S. 22:657 are penal in nature and must be strictly construed. These penalties should not be applied unless the refusal to pay is clearly arbitrary and capricious. Colville v. Equitable Life Assurance Society of U.S., 514 So.2d 678 (La.App. 2d Cir.1987). The fact that an issue raised by an insurer is one of first impression is not alone determinative on the issue of sanctions for denying coverage; even if the policy provision has never been litigated before, the risk of erroneous interpretation is that of the insurer, not the insured. Marks v. Trinity Universal Insurance Co., 531 So.2d 516 (La.App. 2d Cir.1988). On the other hand, the fact that a beneficiary may ultimately be determined to be entitled to policy benefits does not in and of itself justify the invocation of penalties. Colville v. Equitable Life Assurance Society of U.S., supra.
Notwithstanding that we have already affirmed that the limitation of coverage for preexisting conditions contained in defendant's policy must be modified by the provisions of LSA-R.S. 22:215.6, we find that the district court was correct in refusing to award penalties and attorney fees to plaintiff for defendant's failure to pay. While one may argue that defendant took a chance on misinterpreting its policy and the applicable statute, we find that the lack of jurisprudence, taken together with an opinion by the office of the commissioner of insurance, provided a reasonable basis upon which defendant was entitled to rely until such time as the matter was clearly settled, either in this case or another. Even though we hold that LSA-R.S. 22:215.6 implicates defendant's policy provision, defendant was neither arbitrary nor capricious in placing confidence in an erroneous application of the law to the facts by a governmental office charged with the application and enforcement of state laws regarding insurance. The district court was correct in denying plaintiff's request for penalties and attorney fees for those benefits above the $7,500 limitation.
Finally, plaintiff argues that it is entitled to an increase in attorney fees from those awarded by the district court for the work done on appeal. The district court awarded plaintiff attorney fees for the work done at the trial level. Based upon our review of the work contained in this instant record, the legal issues presented, and the appearance of counsel at oral argument, we believe that plaintiff is entitled to have this amount increased by $1,000 to compensate him for the professional services necessary to protect his interests.
The district court judgment is accordingly amended to increase plaintiff's award of attorney fees from $2,500 to $3,500. In all other respects, the judgment is affirmed, with all costs to be paid by defendant.
AMENDED AND AFFIRMED AS AMENDED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, LINDSAY, and STEWART, JJ.
Rehearing denied.
NOTES
[1] Group policies are defined by LSA-R.S. 22:215. In our perusal of this statute, we have been unable to locate the specific niche in that statute into which a multiple employer trust fits. However, the validity of this vehicle for issuing the instant group policy has not been made an issue in this litigation.
[2] This section requires that a correct copy of an application for life or health or accident insurance be attached to the policy or contract when issued or the application may not be admitted into evidence in any action relative to the policy or contract.
[3] Plaintiff points out that the only evidence in support of this argument came from Lester Dunlap, who was neither offered nor accepted as an expert in matters of insurance, but simply testified as a fact witness. Otherwise, plaintiff argues, this support for defendant's policy argument is purely speculative.