IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30435

_____

REGGIE NOLAN,

                    Plaintiff-Counter Defendant-Appellee,

-vs-

GOLDEN RULE INSURANCE COMPANY; ET AL,

                    Defendants,

GOLDEN RULE INSURANCE COMPANY,

                    Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court
      for the Western District of Louisiana
_____
                April 1, 1999

Before KING, Chief Judge, STEWART, Circuit Judge, and
LITTLE, District Judge.[*]


LITTLE, District Judge:

     Golden Rule Insurance Company ("Golden Rule") appeals the

district court's ruling invalidating its policy's "rider"

under Louisiana Revised Statutes § 22:663.  Golden Rule also

appeals the award of penalties and attorney fees under

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

Louisiana Revised Statutes § 22:657(A). Finally, Golden Rule appeals the district court's findings precluding a finding that Reggie Nolan ("Nolan") engaged in fraudulent activity that would have justified canceling the policy. We REVERSE the application of Louisiana Revised Statutes § 22:663 and the award of penalties and attorney fees but AFFIRM the findings that preclude a finding of fraud.

## I.

Nolan applied for and received a group policy of health and accident insurance from Golden Rule. Coverage commenced on 1 October 1994. At that time, Nolan had an existing individual health and accident policy with First National Life Insurance Company ("First National"). Golden Rule's application asked Nolan whether its plan would "replace or change any existing insurance[.]" Nolan answered in the affirmative, so Golden Rule attached a rider to Nolan's policy. The rider stated:

> This policy/certificate will be void and all premiums refunded (less any claims paid) if any other insurance coverage including but not limited to Health Maintenance Organizations which are disclosed on the application, or any amendment to the application, has not been terminated by December 30, 1994. Other insurance coverage as used in the Rider-Amendment does not include life insurance, automobile medical expense insurance, or homeowners medical expense insurance.

In December 1994, after the Golden Rule policy became effective, Nolan injured his back. The district court found that Nolan feared Golden Rule would deny coverage of his treatment for back pain because the injury arose from a preexisting condition. Therefore, Nolan did not cancel his First National policy.

Nolan testified, and the district court found, that Nolan merely retained the First National policy for coverage of the Golden Rule deductible, which was $1,500. Initially, First National paid $4,404.33, but the district court found that Nolan returned $2,984.50 so that he would not receive duplicate reimbursements. The district court found that the net of all payments by First National was $1,419.83.

On 29 January 1997, Golden Rule canceled Nolan's policy after it discovered the continued existence of the First National policy. Golden Rule had already paid $25,840.49 in benefits.

On 12 May 1997, Nolan filed suit against Golden Rule seeking reinstatement of insurance coverage and payment of outstanding medical bills, penalties, and attorney fees. After a bench trial on 23 and 24 March 1998, the district court entered judgment in favor of Nolan. The district court

3

awarded $9,098.10 for outstanding medical bills, $9,098.10 in penalties under § 22:657(A), and $10,000 in attorney fees.

In the district court's opinion, it held the rider invalid under § 22:663. That provision states:

> [N]o group policy . . . shall be issued by any insurer doing business in this state which by the terms of such policy group contract excludes or reduces the payment of benefits to or on behalf of an insured by reason of the fact that benefits have been paid under any other individually underwritten contract or plan of insurance for the same claim determination period. Any group policy provision in violation of this section shall be invalid.

The district court rejected Golden Rule's argument that § 22:663 prohibited only coordination of benefits. Rather, the district court held that "[i]f the legislature intended to prohibit the reduction of benefits, *a fortiori*, it intended to prohibit provisions which void the policy because of other insurance." Nolan v. Golden Rule Ins. Co., No. 97-1269, slip op. at 4 (W.D. La. Apr. 17, 1998).

The district court also rejected Golden Rule's suggestion that our previous decision in Wynn v. Washington Nat'l Ins. Co., 122 F.3d 266 (5th Cir. 1997), controlled the case. Wynn involved an attempt by an insurance company to limit coverage for injuries arising out of a preexisting spinal condition through the use of an exception endorsement. Wynn argued that Louisiana Revised Statutes § 22:215.12, which prevents

4

insurance companies from denying coverage for harm caused by a preexisting condition for more than twelve months following the effective date of the policy, forbade the exception endorsement. This court held the exception endorsement to be valid. The district court distinguished Wynn from the case at hand by reasoning that the condition in the exception endorsement in Wynn was "valid on its own and is independent of the statutory restriction [preventing insurance companies from excluding coverage for harm caused by preexisting conditions]." Id. at 5. Conversely, the district court argued that "the condition imposed by Golden Rule's rider is not a valid condition." Id. Therefore, the district court held the rider invalid.

The district court did not consider Golden Rule's allegations of fraud, though certain of the district court's findings of fact would preclude a finding of fraud.

## II.

We review district court findings of fact for clear error. Fed. R. Civ. Proc. 52(a); Century Marine Inc. v. United States, 153 F.3d 225, 229 (5th Cir. 1998). A finding of fact is "clearly erroneous" when the reviewing court has "a definite and firm conviction that a mistake has been committed." Justiss Oil Co. v. Kerr-McGee Ref. Corp., 75 F.3d

5

1057, 1062 (5th Cir. 1996) (citing <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948)).

We review the district court's legal conclusions de novo. <u>Century Marine</u>, 153 F.3d at 229. A district court's interpretation of a contract is a matter of law subject to de novo review. <u>Am. Totalisatro Co. v. Fair Grounds Corp.</u>, 3 F.3d 810, 813 (5th Cir. 1993). To conduct de novo review, we review the record independently and under the same standard that guided the district court. <u>Id.</u>

## III.

### A.

The district court was incorrect in its analysis of the <u>Wynn</u> case; it does control the matter at hand. In <u>Wynn</u>, this court considered § 22:215.12, which prevents insurance companies from excluding or denying coverage for injuries arising out of preexisting conditions for more than twelve months after the policy becomes effective. So Washington National wrote an exclusion endorsement exempting from coverage any damage arising out of Wynn's preexisting spinal injury. Wynn argued that Washington National could impermissibly circumvent the purview of § 22:215.12 if we

allowed it to write exclusion endorsements in this manner. We disagreed.

We held that "[a]n exception endorsement is qualitatively different from a pre-existing conditions limitation. . . . [A]n insurer in Louisiana is free to limit its liability 'just as individuals may.'" Wynn, 122 F.3d at 269 (quoting Sargent v. Louisiana Health Serv. & Indem. Co., 550 So.2d 843, 845 (La. App. 2d Cir. 1989)). "The pre-existing conditions limitation operates separately and independently from the exception endorsement because it applies to conditions for which an endorsement has not been written and/or which were not disclosed on the application." Id.

We continued: "nothing in the exception endorsement suggests that it is an extension of the policy's pre-existing conditions limitation. Rather, it is a separate and independent limitation on liability that the Wynns signed of their own accord as a condition to receiving insurance." Id. Critical to our decision in that case was the fact that "Washington National would have been entitled to refuse to insure the Wynns if they had not signed the exception endorsement." Id.

As in Wynn, the rider here at issue is "qualitatively different" from the coordination of benefits limitation in

7

§ 22:663. The coordination of benefits limitation operates separately and independently from the rider because it applies where a group policy insurer reduces benefits by the amount paid by the individual policy insurer or where the group policy insurer terminates the policy because an individual policy insurer paid part or all of a claim.

No evidence in the record suggests that the rider is an extension of the policy's coordination of benefits limitation. Rather, the rider reflects Golden Rule's policy that its insureds have only one source of insurance--Golden Rule--on the theory that the insureds will be less likely to over-utilize medical facilities if they have to pay their own deductibles.

Moreover, nothing about the statutory coordination of benefits limitation prevents Golden Rule from limiting its liability, "just as individuals may," by being selective about with whom it contracts. Like Washington National, Golden Rule would have been entitled to refuse to insure Nolan if he had not signed the rider. See <u>Sargent</u>, 550 So.2d at 845 ("[I]nsurers may, by unambiguous and clearly noticeable provisions, limit liability and impose such reasonable conditions as they may wish upon the obligations they assume by contract, absent conflict with a statute or public

8

policy."); see also Oceanonics, Inc. v. Petroleum Distrib. Co., 292 So.2d 190, 192 (La. 1974) (same). And like the Wynns, Nolan signed the rider of his own accord as a condition of receiving insurance.

Therefore, § 22:663 does not invalidate Golden Rule's rider. Under Louisiana law, Golden Rule is entitled to contract only with people who have no other source of insurance. Thus, Golden Rule properly terminated Nolan's policy pursuant to the rider. We, therefore, REVERSE the district court's decision invalidating the rider.

**B.**

Because we reverse the district court's decision invalidating the rider, we must also reverse its award of statutory penalties and attorney fees under § 22:657(A).

"Provisions of LSA-R.S. 22:657 are penal in nature and must be strictly construed. These penalties should not be applied unless the refusal to pay is clearly arbitrary and capricious." Shrader v. Life Gen. Sec. Ins. Co., 588 So.2d 1309, 1317 (La. App. 2d Cir. 1991); see also Soniat v. Travelers Ins. Co., 538 So.2d 210, 216 (La. 1989). "Whether or not an insurer's reasons for refusing to pay are arbitrary and capricious is a question of fact to be determined from the facts and circumstances of each case." Shrader, 588 So.2d at

1315; see also Colville v. Equitable Life Assurance Soc'y of United States, 514 So.2d 678, 682 (La. App. 2d Cir. 1987). "When claiming penalties and attorney fees, the insured has the burden of proving that any fault or failure to pay the claim was attributable to the insurer." Colville, 514 So.2d at 682. "Although a beneficiary may ultimately be determined to be entitled to policy benefits, this judicial determination does not in and of itself justify the invocation of penalties." Id. at 682–83.

Though we review the district court's factual findings for clear error, this standard does not insulate factual findings undergirded by an erroneous view of controlling legal principles. Johnson v. Hosp. Corp. of Am., 95 F.3d 383, 395 (5th Cir. 1996). Here, the district court awarded statutory penalties and attorney fees on the theory that Golden Rule had arbitrarily and capriciously denied coverage. We find this to be clear error. Golden Rule terminated Nolan's policy consistently with a valid contractual provision in its rider; such conduct is neither arbitrary nor capricious. Rather, it is the bargain the parties struck.

We, therefore, REVERSE the award of statutory penalties and attorney fees.

**III.**

10

Finally, we address Golden Rule's claim that the district court lacked a sufficient evidentiary basis for the following factual findings: (1) that Nolan returned all but $1,419.83 of First National's benefit payments, and (2) that Nolan did not act with an intent to defraud Golden Rule when he failed to cancel his First National policy. Together, these findings preclude a finding of fraud.

Though we might disagree with the district court if our review was de novo, these findings do not constitute clear error. The district court based its conclusion on evidence presented at trial, including the testimony of Nolan. Judging Nolan's credibility is the role of the trial court, and we cannot say, upon review of the record, that the district court's decision is so contrary to the weight of the evidence as to be clearly erroneous.

We additionally note that Golden Rule asserted fraud as an alternative basis for canceling the policy. Since we reversed the district court's decision with respect to the validity of the rider, Golden Rule legitimately canceled the policy. Therefore, Golden Rule need not rely on the defense of fraud to avoid statutory penalties under § 22:657(A) by showing that it did not act arbitrarily and capriciously in canceling the policy.

11

We, therefore, AFFIRM the district court's findings of fact that preclude a finding of fraud.

## IV.

In summation, we AFFIRM the district court's findings of fact precluding a finding of fraud, but we REVERSE its judgment in favor of Nolan and its award of statutory penalties and attorney fees. We therefore remand for entry of judgment on Golden Rule's counterclaim for reimbursement of the claims it paid for Nolan's benefit. Nolan will bear the costs of this appeal.