# United States Court of Appeals
# for the Fifth Circuit

————————

No. 23-30237
CONSOLIDATED WITH
No. 23-30498

————————

United States Court of Appeals
Fifth Circuit

**FILED**

October 25, 2024

Lyle W. Cayce
Clerk

MINA RAYMOND; STEVEN RAYMOND,

*Plaintiffs—Appellants*,

*versus*

UNUM GROUP; PAUL REVERE INSURANCE COMPANY; NEW
YORK LIFE INSURANCE COMPANY,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC Nos. 3:20-CV-352, 3:20-CV-352

———————————————————————

Before DENNIS, SOUTHWICK, and HO, *Circuit Judges*.

PER CURIAM:[*]

This case arises from a disability insurance coverage dispute between the policy holder, Plaintiff-Appellant Mina Raymond (whose husband Steven Raymond is also a co-plaintiff, together the "Raymonds"), and the insurer, New York Life Insurance Company ("NYL"), and its related entities

————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-30237
c/w No. 23-30498

UNUM Group and Paul Revere Insurance Company ("PRL") (together, the "Defendants-Appellees"). The Raymonds appeal the district court's denial of their motion for summary judgment and sua sponte grant of summary judgment in favor of the Defendant-Appellees. We AFFIRM the district court's entry of summary judgment.

I

A

In 1988, Mina purchased a Premier Disability Income Insurance Policy from NYL. PRL has administered Mina's claim for NYL since August 2000. The Policy provides a monthly income Total Disability ("TD") benefit of $1,500 if Mina becomes "totally disabled," until Mina is "no longer disabled, or reaches 'age 65,'" whichever comes first. The Policy expressly provides: "**Total Disability** means the Insured can not do the substantial and material duties of his or her regular job. The cause of the disability must be an injury or a sickness." Regular job is defined as "[t]he occupation, or occupations if more than one, in which the Insured is engaged when a disability starts." Additionally, the Policy also conditioned the TD benefit on periodic and satisfactory proof of a "continuing disability," stating: "You must give us written proof of disability within 90 days after the end of each period for which a benefit is payable."

A rider included in the Policy also provides for a "Monthly Income Benefit for Residual Disability," which is "not payable . . . if a Monthly Income Benefit for Total Disability is payable." The Policy states:

> **Residual Disability** . . . means that due to an injury or sickness as defined in this policy, the insured:
>
>> (a) Is not able to do one or more of the substantial and material duties of his or her regular job; or

2

No. 23-30237
c/w No. 23-30498

(b) Directly and apart from any other cause, has a loss of income as defined in this rider of at least 20%.

Finally, the Policy also contained a Social Insurance Supplemental Income ("SIS") Benefit, paying up to $500 extra per month during any term of TD or RD upon NYL's receipt of "satisfactory" proof that Mina "has currently applied" for government programs.

B

In October 1996, after being diagnosed with Multiple Sclerosis ("MS"), Mina left her position as a Pharmacist with Eckerd Drugs and applied for benefits under the Policy. By her own assessment, prior to her diagnosis, three-quarters of her job duties included "filling Rxs," "ensuring accuracy of Rxs," and "counseling customers about their Rxs." Additionally, she spent the remainder of her time "supervising other employees," "transcribing Rxs from nurses and doctors," "restocking drug inventory and ordering meds," and "administrative duties." She also reported that she was required to work twelve-hour shifts and stand for extended periods of time.

In early 1997, NYL approved Mina's claim application and began paying her monthly TD benefit and SIS benefit. Shortly thereafter, Mina decided to return to work part-time on a very limited basis as a "pharmacy consultant." After Mina sought NYL's opinion on the impact the new position would have on her benefits, NYL informed her that her benefits would continue because Mina was not working in her "regular occupation" as a pharmacist based on her description. In 2000, PRL assumed responsibility from NYL for the administration of Mina's claim. In May of 2001, Mina sought approval to return to work at Eckerd's Drugs part-time as an "on-call floating pharmacist" a couple of days a week. In response, PRL informed Mina that her TD benefit would continue so long as she worked in

3

No. 23-30237
c/w No. 23-30498

a "limited capacity." PRL also expressly "reserve[d] the right to review [her] claim further under the Residual Disability provision of [her] policy" should her hours increase.

On January 18, 2001, PRL sent Mina a letter seeking written documentation that she had applied for government social security, as required under the Policy. While Mina ultimately left PRL a voicemail informing them that she had applied for Social Security Disability Insurance ("SSDI") benefits, she never responded to their repeated requests to send them copies of her application.

In September of 2001, Mina changed jobs again, accepting a position at Bolton's Pharmacy, where she still works today. By 2014, her work hours had significantly increased from around 15–20 hours per week to 20–25 hours per week. Despite increasing her hours and responsibilities, Mina failed to update her hours or income on her annual Disability Status Updates ("DSUs") to PRL for more than ten years, indicating only that she was "working on a limited basis." And even after 2014, when Mina began providing more detailed information in her DSUs, she still admittedly underreported her hours and income.

In 2018, PRL received information from Mina's physician indicating she was working in a greater capacity than she had reported. PRL began an inquiry into the true nature of Mina's working duties, hours, and pay as a pharmacist. Their investigation, through interviews with Mina and her supervisor, and an examination of her tax returns, revealed that Mina underreported her hours and income. In response to the investigation, Mina stated her current duties as a pharmacist included:

- Occasionally packing and labelling pharmaceuticals (when necessary because a technician is unavailable);
- Checking prescriptions for accuracy and safety;

No. 23-30237
c/w No. 23-30498

- Reviewing and interpreting physician orders and detecting therapeutic incompatibilities;
- Providing information to patients and responding to their questions about medications and their use, including interactions and side effects;
- Communicating with physicians;
- Maintaining records for controlled substances; and
- Rarely compounding medications.

On January 14, 2020, PRL informed Mina by letter that she was not eligible for TD benefits from 2014–2019 because "[d]espite your reported restrictions and limitations, you continue[d] to work in a reduced capacity in your Regular Job as a Pharmacist." Additionally, PRL found that she did not qualify for the RD benefit because her income was not reduced by at least 20% from her prior employment. On March 31, 2021, PRL officially closed Mina's claim, discontinued all benefits under the Policy, and demanded return of the estimated overpayment of $222,318.91.

## C

The Raymonds originally filed this lawsuit in Louisiana state court before the defendants successfully removed it on diversity grounds to the Middle District of Louisiana on June 10, 2020. In their operative third amended complaint, they claimed that Mina remained qualified for TD benefits under the Policy. The complaint sought past and future benefits, and statutory, tort, and punitive damages. In response, the Appellees filed a counterclaim for the amounts overpaid to Mina.

Discovery opened in April of 2021. Two discovery disputes are relevant. One involved the Raymonds' unresolved motion to set aside the magistrate judge's decision declining the Defendants motion to compel two attorney-client privileged documents. The district court did not rule on that motion prior to entering summary judgment. The other deals with the

Raymonds' attempts to obtain information dealing with the insurers' claim reserves[1]. Throughout discovery, PRL objected to these discovery requests, contending that claim reserves have no bearing on PRL's decision to terminate Mina's benefits.

On August 19, 2022, the Raymonds filed a motion for summary judgment, partially at issue here, seeking a declaration that Mina is entitled to TD benefits under the Policy. In response, the Appellees argued that the undisputed material facts demonstrate that Mina is *not* entitled to TD benefits, and that the district court was authorized to grant summary judgment in their favor.

On March 16, 2023, the district court issued an order denying the Raymonds' motion for partial summary judgment and ordered them to show cause within 14 days why summary judgment should not be entered in the Appellees favor. The district court explicitly stated, "Plaintiffs' failure to timely submit a show cause memorandum will be deemed a waiver, and will result in *sua sponte* dismissal of Plaintiffs' claims, leaving only Defendants' counterclaims for trial." Despite the district court's warning, the Raymonds failed to file their response until the day after the deadline, and simply re-asserted their previous arguments, making no assertion that they were prejudiced by lack of notice.

On March 31, 2023, the district court issued a partial judgment dismissing Raymonds' claims with prejudice and leaving only PRL's overpayment counterclaim for trial. In its ruling, the district court determined that the Raymonds had waived their response due to an untimely filing, but nonetheless acknowledged that it had reviewed the Raymonds'

---

[1] "Claim reserves represent the amount of money an insurer is required to hold to satisfy potential future liabilities . . . ."

arguments and found them wanting. Following the district court's entry of partial summary judgment, the parties reached an agreement to resolve the counterclaim. Those claims were dismissed on July 17, 2023, and the district court entered final judgment on July 19, 2023. The Raymonds timely appealed.

## II

We review grants of summary judgment de novo, applying the same standard as the district court. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004) (citing *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 890 (5th Cir. 2003)). Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(A). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." FED. R. CIV. P. 56(C)(1)(A). We must draw all justifiable inferences in favor of the non-moving party. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). We review whether the district court afforded the losing party proper notice for harmless error. *Atkins v. Salazar*, 677 F.3d 667, 678 (5th Cir. 2011). If a district court fails to provide adequate notice, that error is "considered harmless if the nonmovant has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 28 F.3d 1388, 1398 (5th Cir. 1994) (emphasis omitted).

III

The Raymonds argue that the district court improperly granted summary judgment for three reasons: (1) the district court incorrectly applied Louisiana substantive law to the Policy; (2) the district court failed to provide sufficient notice that their claims were subject to dismissal on summary judgment; and (3) the district court failed to give them a full and fair opportunity to conduct discovery. We discuss each in turn.

A

We first address whether the district court correctly applied Louisiana law to the Policy. In a diversity case, this court must apply state substantive law. *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 344 (5th Cir. 2020). As Louisiana choice-of-law rules require and the parties agree, Louisiana law applies to the interpretation of the Policy at issue. *Id.* "Under Louisiana law, insurance policies are contracts between the parties and 'should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" *Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701, 713 (5th Cir. 2017) (quoting *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580). "Where the terms of the contract are clear and explicit and do not lead to absurd consequences, no further interpretation may be made in search of the intent of the parties." *Id.* (citing LA. CIV. CODE art. 2046). And "[e]ach provision in [the] contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art. 2050.

Additionally, Louisiana Revised Statute § 22:990 defines the limitations of disability loss of income policies like the one here:

> A. An individual or group disability loss of income policy to provide loss of income protection against total disability may

8

No. 23-30237
c/w No. 23-30498

be issued in this state consistent with the definitions and provisions of this Section.

B. Total disability may be defined in relation to the inability of the person to perform duties but shall not be based solely upon an individual′s inability to either:

> (1) Perform "any occupation whatsoever", "any occupational duty", or "any and every duty of his occupation".

> (2) Engage in any training or rehabilitation program.

C. A general definition of total disability in such a policy shall not be more restrictive than one requiring the individual to be totally disabled from engaging in any employment or occupation for which he is, or becomes, qualified by reason of education, training, or experience and which provides him with substantially the same earning capacity as his former earning capacity prior to the start of the disability.

D. An insurer may specify the requirement of the complete inability of the individual to perform all of the substantial and material duties of his regular occupation or words of similar import.

La. R.S. § 22:990[2].

Primarily, the Raymonds argue that the district court erred by failing to interpret the definition of TD under the Policy as whether Mina could

---

[2] The Policy was issued in 1988, and Louisiana enacted La. R.S. § 22:990 in 1990. To the extent there is any retroactivity issue, the Raymonds forfeited this argument by failing to raise it before the district court and in their opening brief on appeal. *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) (holding "[a] party forfeits an argument by failing to raise it in the first instance in the district court").

perform "the substantial and material duties" of her regular "occupation" as a pharmacist "in the usual and customary way." *See Laborde v. Employers Life Ins. Co.*, 412 So. 2d 1301, 1304 (La. 1982). We disagree. The district court correctly found that the undisputed material facts demonstrate that Mina can perform "the substantial and material duties" of her job as a pharmacist, so she is not qualified for TD under the plain language of the Policy.

First, our decision in *House v. American United Life Ins. Co.*, 499 F.3d 443, 452 (2007) dictates that an insured individual qualifies as TD if they cannot perform the "the substantial and material duties" of her job, read in tandem with the RD clause. In *House*, we addressed a policy with a nearly identical definition of total disability: "TOTAL DISABILITY and TOTALLY DISABLED mean that because of Injury or Sickness the Person cannot perform the material and substantial duties of his regular occupation."[3] *House*, 499 F.3d at 453. And while the policy at issue in *House* had a "Partial Disability" clause rather than an RD clause, the definition was again nearly identical to the Policy's RD clause here.[4] The insured individual in *House* was an attorney who, prior to an developing a heart condition, was a trial lawyer at a law firm. *Id.* at 447. His condition forced him to quit working as a litigator due to the stress, but he continued to work as a non-litigating government attorney. *Id.* He, like the Raymonds here, argued that the total

---

[3] Compare with the definition in the Policy here: "**Total Disability** means the Insured can not do the substantial and material duties of his or her regular job. The cause of the disability must be an injury or a sickness."

[4] The policy in *House* states that a person is partially disabled if "because of Injury or Sickness the Person, while unable to perform every material and substantial duty of his regular occupation" is still capable of "performing at least one of the material and substantial duties of his regular occupation or another occupation on a part-time or full time basis" and "is earning less than 80% of his Indexed Pre-Disability Earnings due to that same Injury or Sickness." *House*, 499 F.3d at 453. Compare with the Policy's definition of RD, *supra* p. 3.

disability and partial disability clauses must be read separately, so that despite his continued work, he remained qualified as totally disabled under his policy because his job as a *trial lawyer*, not a lawyer, was his "regular occupation." *Id.* at 453. We disagreed, holding that the policy must be read to analyze the total disability and partial disability clauses together: "Reading the partial and total disability provisions *in pari materia,* in order to obtain total disability benefits, House would have to demonstrate that he cannot perform all of the material and substantial duties of his occupation." *Id.* And even if the insured was unable to resume the exact same occupation as a trial lawyer, he was "clearly able to perform some of the material aspects of his occupation as an attorney. . . this takes House outside of the definition of total disability and places him squarely within the definition of partial disability." *Id.* at 454.

Applying *House* to the case at hand, Mina does not qualify for TD benefits under the Policy's plain language. Mina fills prescriptions, ensures the accuracy of those prescriptions, discusses prescriptions with customers, and oversees employees in her current job, just as she did in 1996. However, she can no longer stand and work for twelve-hour shifts as she did prior to diagnosis. Just as in *House*, Mina "is able to perform one or more, but not all, of the material and substantial duties of [her] occupation." *House*, 499 F.3d at 454. Thus, "this takes [her] outside of the definition of total disability." *Id.* Reading the Policy in its entirety, the RD provision more accurately describes Mina's condition, but it is undisputed that Mina does not meet the income requirements for RD benefits.[5]

The Raymonds' arguments to the contrary are unavailing. Primarily, they contend that *House* applies an Employee Retirement Income Security

---

[5] *House* also makes clear that TD and RD provisions must be read to be mutually exclusive. *House*, 499 F.3d at 453.

Act ("ERISA") standard, not Louisiana law, and directly conflicts with Louisiana statute. Instead of applying *House,* they argue that the district court should have interpreted the definition of TD under the Policy as whether Mina could perform "the substantial and material duties" of her regular "occupation" as a pharmacist "in the usual and customary way." *See Laborde*, 412 So. 2d at 1304. But the relevant statutes and our precedent demonstrate that *House* is the correct standard to apply.

First, there is no material difference between the law applied in *House* and applicable Louisiana law. The Raymonds are correct that in *House*, we applied an ERISA standard, but that is a distinction without a difference. When we interpreted the definition of totally disabled under the *House* policy, we specified that "the language of the policy guides our de novo interpretation." *House*, 499 F.3d at 453. That is identical to the standard under which we interpret the Policy here. *See Kinsale Ins. Co. v. Georgia-Pac., L.L.C.*, 795 F.3d 452, 454 (5th Cir. 2015) ("We review a district court's interpretation of an insurance contract de novo because it is a matter of law."). Further, our interpretation of the Policy in *House* comports with Louisiana law, which requires that "[e]ach provision in [the] contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

Second, contrary to the Raymonds' arguments, our decision in *House* explicitly found the total disability provision in *House* was consistent with Louisiana law because La. R.S. § 22:990(D) "permits an insurer defining total disability to 'specify the requirement of the complete inability of the individual to perform all of the substantial and material duties of his regular occupation or words of similar import.'" *House*, 499 F.3d at 454–55. The

same is true here—the definition of TD in Mina's policy, and the one applied by the district court—is permitted by La. R.S. § 22:990 (D).[6]

Because the district court correctly found that that Mina did not qualify for TD and RD benefits, the remainder of the Raymonds' arguments pertaining to whether the district court correctly found that PRL had "just and reasonable grounds" under Louisiana law to deny Mina benefits are easily dismissed. First, the district court clearly correctly interpreted Louisiana law when it dismissed the Raymonds' claims for statutory penalties, extracontractual damages, and future benefits related to PRL's denial of Mina's TD and RD benefits. While La. R.S. § 22:1821(A) subjects insurers who fail to pay disability benefits without "just and reasonable grounds" to penalties, "penalties should not be applied unless the refusal to pay is clearly arbitrary and capricious." *Shrader v. Life Gen. Sec. Ins. Co.*, 588 So. 2d 1309, 1317 (La. App. 2nd. Cir. 1991), *writ denied*, 592 So. 2d 1317 (La. 1992); *see also Nolan v. Golden Rule Ins. Co.*, 171 F.3d 990, 993 (5th Cir. 1999). And when an insurer terminates a "policy consistent with a valid contractual provision," as PRL did here, "such conduct is neither arbitrary or capricious." *Nolan*, 171 F.3d at 993.

Further, the district court also correctly applied Louisiana law when it found that PRL had "just and reasonable grounds" to deny Mina SIS benefits. The SIS rider in the Policy entitles the insured to up to $500 extra

---

[6] And while *House* does not explicitly address the applicability of *Laborde* (the Raymonds' preferred standard, which was decided before Louisiana enacted La. R.S. § 22:990), it does control how we interpret Louisiana law on the definition of total disability. Even if *Laborde* were inapposite to *House*, in our circuit, "a prior panel decision 'should be followed by other panels without regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes this Court's [prior] decision clearly wrong.'" *F.D.I.C. v. Abraham*, 137 F.3d 264, 269 (5th Cir. 1998) (quoting *Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (en banc)).

per month during any term of TD or RD upon NYL's receipt of "proof satisfactory to us" that Mina "has currently applied" for government programs.[7] As the district court noted, "[i]t is undisputed that Mina failed to provide such proof for the period in question. Rather, after ignoring PR Life's repeated requests for documentation, Mina 'did not notice' that the SIS Benefit was discontinued." The rider clearly states that "without proof, in addition to the proof required elsewhere in the policy, we can not consider payment of a claim for benefits under this rider." PRL informed Mina that "proof satisfactory to us" included "a copy of your application" for social security benefits. But Mina did not respond. PRL's termination of benefits was thus "consistent with a valid contractual provision," and "just and reasonable." *See Shrader*, 588 So. 2d at 1317; *Nolan*, 171 F.3d at 993.

B

The fact that PRL correctly denied Mina's benefits under the terms of the Policy also effectively forecloses the Raymonds' argument that the district court reversibly erred when it failed to provide them with adequate notice that their claims were subject to dismissal on summary judgment. Even assuming arguendo that the district court's sua sponte dismissal of the Raymonds' claims was without proper notice, we review that decision for harmless error. *Atkins*, 677 F.3d at 678. "Consequently, even if the district court wrongly granted summary judgment . . . without notice . . . such error may be harmless if the record is adequately developed to support a summary judgment decision." *Id.* Because PRL properly terminated Mina's benefits under the policy, any potential failure of the district court to provide notice to the Raymonds would be harmless error.

_____

[7] Whether Mina was entitled to TD throughout these years is not at issue, and we assume arguendo that she met this first condition.

C

Finally, our finding that the district court properly granted summary judgment undermines the Raymonds' contention that the district court reversibly erred when it dismissed their claims without permitting additional discovery. Under our precedent, "a plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion." *Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir. 1989). As previously discussed, the undisputed material facts demonstrate that PRL properly terminated Mina's benefits under the terms of the Policy, warranting summary judgment in favor of PRL on all of the Raymonds' claims. No additional discovery is likely to change that ruling. We hold that the district court did not err when it failed to grant additional discovery.

D

For the reasons outlined above, the district court's ruling is AFFIRMED.